# *Andrew Swearingen, esq. *against* Rev. [*322 Thomas Ledlie Birch.

Where the weight of evidence preponderates against a verdict, a new trial will be granted; and respect is due to the opinion of the judge who tried the cause.

Great allowance is to be made for what a man says during the trial of his cause.

APPEAL from the Circuit Court of Washington county.

The declaration was in slander, and contained four counts. The first and second counts charged the defendant with having asserted in the Ohio Presbytery held at Buffaloe, that he could prove the testimony given by the plaintiff on a certain complaint exhibited by the defendant against the Reverend John M'Millan to be false, and that he had sworn falsely before the presbytery. The third and fourth counts charged him, with asserting in the Circuit Court at Washington, in a certain cause then on trial between the said Thomas as plaintiff and Hugh Wiley as defendant, wherein the now plaintiff was examined as a witness, that he swore falsely, and that he the now defendant could prove every word of it to be false.

The cause came on to trial at Washington on the 28th October 1805, before SMITH and BRACKENRIDGE, Justices, when there was a contrariety of evidence as to the proof of the words laid in the two last counts ; but the justices thought that the weight of evidence preponderated in favour of the defendant. The jury found a verdict for the plaintiff, and assessed his damages on the first and second counts at 120 dollars ; and the like sum of 120 dollars for his damages on the third and fourth, with costs.

The court granted a new trial ; whereupon the plaintiff appealed.

Messrs. Addison and Campbell for the plaintiff. It is agreed, that judgment be arrested on the first and second counts, upon the opinion expressed by the court in Birch *v.* M'Millan, a few days ago. Separate damages having been given on the two sets of words laid, this cannot invalidate the finding of the jury, as to the words spoken in the Circuit Court, on the trial of Wiley.

It is also freely agreed, that the matters of law fall within the immediate province of the court, while facts belong solely to the jury. The former justly possess a controul over the latter, and may set aside their verdicts, when given contrary to law. When juries assume upon themselves to decide against the known law, they become as dangerous as any set of tyrants, and all certainty and security in the administration of justice are

[Swearingen v. Birch.]

banished from society, unless the judges interpose their summary powers.    Still juries are vested with the constitutional *right of deciding on facts, and of determining exclusively on the credibility of witnesses.    Courts cannot substitute themselves as juries ; for this would render trials by the latter wholly useless and of no avail.    The legal discretion of judges in granting new trials is measured and bounded by certain known rules ; and it has been adjudged, that they will not exercise this power where there has been a contrariety of evidence on both sides, though the judge who tried the cause should be of opinion, that the strength and weight of the evidence has been against the verdict.    3 Wils. 47.    Apply this principle to the case now under consideration.    The great question on the trial as to the two last counts was, whether the words were spoken by defendant in the Circuit Court in his defence, by way of communication to his counsel, or out of malice to injure the plaintiff's reputation ?    Mr. John Porter, then a student of the law, swore, that he sat near to the defendant, and that the expressions were uttered in a loud voice, as the now plaintiff was giving in his evidence, not by way of instruction to his counsel, but as if he did not care who heard him.    It appeared to him to be the impulse of the moment, and the imprudence of the defendant's conduct struck him forcibly at the time.    Mr. James Mountain one of the defendant's counsel, gave a different account of what passed, and swore that the words were spoken to him as counsel. The jury have judged of the occasion of speaking the opprobrious words, and have taken into view all the circumstances of the case.    They have thought proper to credit the relation given by Porter who is corroborated by the circumstance, that the defendant had before made use of the same expressions in the Ohio Presbytery.

The jurors having thus exercised their constitutional right of deciding on the contrariety of evidence, it is apprehended, that the court will not deem themselves authorized to affirm the order of the Circuit Court in awarding a new trial.

Mr. Mountain for the defendant.

The adverse counsel have been compelled to admit, that unless courts will exercise their undoubted powers in granting new trials, justice cannot subsist amongst us.    The rule as to not granting new trials, where there has been a contrariety of evidence, is not correct.    Numerous instances appear in the books, and have occurred here, where verdicts have been set aside as contrary to the weight of evidence.    Lord KENYON has said, there are no limitations in gaining new trials.    They will be granted or refused, as it will tend to the advancement of justice. 6 Term Rep. 638.    Lord MANSFIELD has said, they *are indispensably necessary to justice, and are only having causes more deliberately heard.    1 Burr. 393.    According to Lord PARKER the best general rule in such cases, is doing jus-

[Swearingen v. Birch.]

tice to the parties ; or in other words, attaining the justice of the
particular case.   Law Evid. by Lofft. 1150.   And according to
Lord HOLT, a new trial should be granted, even against the cer-
tificate of the judge, when a cause requires re-examination.
12 Mod. 336.

It is obvious, that the judges who heard the trial and the ex-
amination of the witnesses, are more competent to judge of the
testimony, than those who were not present : and it will be found
by adverting to their notes, that there was not that strong mark-
ed contrariety of evidence which has been represented by the
plaintiff's counsel.   Mr. Porter's words were, "I will not be par-
"ticular, whether the defendant spoke the words to his counsel,
"or me ; but I am certain that I heard them ; I rather thought,
"he did not direct himself to his counsel, but that it was the
"impulse of the moment, and I thought it imprudent."   My
account of what passed at the time, certainly differed from Mr.
Porter's ; but my oath was positive and particular, and not as I
rather thought.   I sat next to the defendant, whose solicitude dur-
ing the trial with Wiley was great ; I confidently swore to what
passed within my own knowledge and hearing, and knew with
certainty from my situation, and his manner of raising his head
from his hand in haste, that his communication was addressed to
me as his counsel ; and from my knowledge of him, I was able
to ascertain that his expressions did not exceed his usual tone of
voice.   Let any impartial persons determine on this statement,
which is correctly made from the written notes of the judge,
where the strength of the evidence lay.   To this may be added,
that Andrew Hunter proved the recollection of Porter, as to the
situation of the defendant, to have been imperfect ; he corrobo-
rated my testimony in that particular.

The present verdict can only be accounted for as an intended
set off to the recovery in Birch v. M'Millan.   The disputes be-
tween the two clergymen have greatly agitated the public mind.
But inasmuch as the weight of evidence strongly inclines to
prove, that the words charged against the defendant were spoken
in his defence, as instructions to his counsel, within the precincts
of the bar, and in the cause then trying were relevant, the law
protects him therein on the grounds of public policy.   And upon
the whole, it is hoped that the decision of the Circuit Court will
be affirmed.

TILGHMAN, C. J. delivered the opinion of himself, and YEATES,
Justice.

This is an action of slander, which comes before the court on
an appeal from the judgment of the Circuit Court of Washing-
ton *county, who awarded a new trial, a verdict having
been found for the plaintiff.   [*325

It appears from the report of the judges, before whom the
cause was tried, that the words for which the action was brought,
were spoken by the defendant during the trial of a cause in which

4 YEATES—20

[Swearingen v. Birch.]

he was plaintiff, and the plaintiff in the present cause was examined as a witness. The defendant was sitting in the bar next to his counsel, and after hearing the plaintiff's testimony, he said, either that the witness had sworn falsely, or he could prove every word he had sworn to be false; and for speaking these words the present action is brought. The Circuit Court charged the jury, that if they should be of opinion, the defendant addressed the words to his counsel with a view to his defence, the action could not be supported; but that the words were actionable if published by the defendant maliciously, without a view to his defence. There was a contrariety in the evidence. Mr. Mountain, the defendant's counsel, testified confidently, that the words, though spoken louder than they needed to have been, were addressed by the defendant to his counsel, and not intended to be published. On the other hand, Mr. Porter, then a student of law, who was sitting in the bar near to the defendant, rather thought, that the words were not addressed to the defendant's counsel, but uttered under a sudden impulse of mind.

Mr. Addison, who argued for the plaintiff in this court, has very truly stated, that questions of law are to be decided by the court, and questions of fact by the jury; and that in granting new trials, the court are bound to exercise a reasonable and legal discretion. But it by no means follows from these principles, that if the jury find a verdict, which in the opinion of the court is against the evidence, a new trial ought not to be granted; because by granting a new trial, the court does not assume to themselves the trial of facts; they only submit the facts to the consideration of another jury. A case was cited from 3 Wils. 47, to shew, that where evidence is given on both sides, a new trial is not to be granted. But this is not a sound principle. There may be a contrariety of evidence, and yet the weight of it greatly preponderates against the verdict; and in such cases, justice requires that there should be a second trial. And so are the authorities.

It is extremely difficult for this court, who did not hear the evidence, to ascertain with precision what was the weight on either side. The notes of the judges who tried the cause, cannot give so clear an idea as if we had heard the testimony. For this reason, we are in duty bound to pay very great respect to the opinion of these judges, especially as they have ordered a *new trial, which insures the plaintiff an opportunity of *326] attaining the justice of his case.

Besides, we are of opinion, that great allowance is to be made for what a man says when attending the trial of his own cause. He certainly had no right to make that circumstance a cover for malicious slander; but he ought to be indulged in the utmost freedom in communicating his sentiments to his counsel or the court. For a man has a right to address himself to the court in his own cause. The more we reflect upon the subject, the more we shall be convinced that it will not promote the

peace or happiness of society, to encourage actions of slander for what is said by the parties concerned during the trial of their causes.

In the case under consideration, the counsel for the defendant has sworn, that he is certain his client addressed his words to him. Of this, from the nature of things, the counsel is a better judge than any other person ; nor does any witness undertake positively to contradict him. He is moreover fortified by Alexander Hunter. The jury were undoubtedly the judges of the credibility of the witnesses, and no doubt they have conscientiously decided according to their judgment. But as the judges who tried the cause, were dissatisfied with the verdict, and their notes of the evidence do not warrant us in concluding that they erred in judgment, we think it on the whole most conducive to justice, that the matter should be submitted to the consideration of another jury.

The judgment of the Circuit Court is therefore affirmed ; and the costs in this court must abide the event of the new trial.


Robert M'Nair, David M'Nair, Alexander M'Nair, Willie M'Nair, David M'Nair, jr. and John Meddock, plaintiffs in error, *against* Rempublicam.

Indictment for a forcible entry into a messuage, tenement, and tract of land, without mentioning the quantity of acres, held bad after conviction.

WRIT of error to the Quarter Sessions of Crawford county. The indictment was found in July sessions 1801, and stated, that Robert M'Nair, &c. on the 17th day of June in the year of our Lord 1801, at the township of Waterford in the said county of Crawford, and within the jurisdiction of this court, with force of arms and a strong hand, into the messuage, tenement, and tract of land, of a certain John Vincent, then and there being the free tenement of the said John Vincent, and upon the possession of him, the said John Vincent, did enter, and with the like force of arms, him the said John Vincent of the said *messuage, tenement, and tract of land did disseise, and from the same, did expel, and remove him, the said John, [\*327 and from the aforesaid day of June, in the year aforesaid, from the said messuage, tenement, and tract of land, with force of arms and a strong hand, at the township and county aforesaid, have hitherto kept out, and still do keep out the said John Vincent, to the great disturbance of the public peace, contrary to the form meaning and effect of the statutes and act of assembly in such cases made and provided, and against the peace and dignity of the commonwealth of Pennsylvania.

Mr. Baldwin for the plaintiffs in error, excepted to the indict-